UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

D-24 KOMAL ACHARYA,

       Defendant.

_____/

Case No. 11-20468-24

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE MONA K. MAJZOUB

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL [572]**

Defendant Komal Acharya makes a Renewed Motion for Judgment of Acquittal [572] following a conviction by jury trial of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. For the reasons stated below, Defendant's Renewed Motion for Judgment of Acquittal is DENIED.

**Procedural and Factual Background**

Beginning on July 3, 2012, a jury trial was held in which Defendant Komal Acharya was tried, along with a number of other defendants, for conspiracy to commit health care fraud. On July 25, 2012, Defendant Acharya filed a written Motion for Judgment of Acquittal [544]. On July 31, 2012, following the conclusion of the presentation of evidence by both the government and defendants, the Court heard oral argument on Defendant Acharya's Motion for Judgment of Acquittal. After argument, the Court concluded that there existed a sufficient question of fact as to permit the jury to find, through permissible inferences, that Defendant Acharya was guilty of conspiracy to commit health care fraud.

On August 10, 2012, the jury found Defendant Komal Acharya guilty of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. Five co-defendants were also found

guilty of conspiracy to commit health care fraud: Babubhai Patel, Lokesh Tayal, Ashwini Sharma, Viral Thaker, and Brijesh Rawal. The jury was unable to reach a verdict with respect to co-defendant Harpreet Sachdeva.

On August 21, 2012, Defendant Acharya filed the present Motion for Judgment of Acquittal.

**Analysis**

Federal Rule of Civil Procedure 29(c)(2) permits a court to set aside a verdict of guilty and to enter a judgment of acquittal. In doing so, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1978) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original); *see also United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008). "All reasonable inferences must be drawn in favor of the jury's verdict." *Conaster*, 514 F.3d at 518. When evaluating the evidence in a Rule 29 motion, "the court must refrain from independently judging the credibility of witnesses or weight of the evidence." *United States v. Donaldson*, 52 F. App'x 700, 706 (6th Cir. 2002). "Circumstantial evidence may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilty beyond a reasonable doubt." *Id.* (citing *United States v. Phibbs*, 999 F.2d 1053, 1064 (6th Cir. 1993).

**Phone Calls Regarding Boxed Medications**

In response to Defendant's motion, the government presented several pieces of evidence that were discussed at trial.

First, the government introduced evidence establishing that Defendant Acharya stored multiple boxes of medications at her apartment at the request of co-conspirator Babubhai Patel. These boxes contained medications that had been billed to Medicare, but not dispensed, and were

2

part of the overall conspiracy to commit health care fraud. The government also introduced as evidence a recorded phone call between Babubhai Patel and Defendant Acharya in which they discussed billed-but-not-dispensed medications that had been stolen[1] from another apartment. Acharya stated that "Legally you cannot do anything since there was medicine in it." The government argued that the call demonstrated evidence that Acharya was aware that the medications were the fruit of an illegal scheme because she recognized that Patel could not involve the police in the recovery of the stolen medications.

The government also introduced another recorded phone call between Patel and Acharya that occurred shortly after Acharya had suffered from an overdose of prescription medication at her apartment and was recovering in the hospital. In the phone call Patel repeatedly urges Acharya not to provide her true address to the hospital. Acharya agreed (although she did in fact provide her true address to hospital staff). The government argued that Patel was concerned about Acharya giving her address to the hospital because of his fear that law enforcement might search the apartment and find the billed-but-not-dispensed medications. The government further argued that the jury could infer from Acharya's agreement and lack of curiosity regarding Patel's request that she lie about her address that Acharya knew why Patel wanted her to lie - namely, because of the presence of the billed-but-not-dispensed medications.

Defendant provides a number of arguments in response. Defendant first argues that, to arrive at a verdict of guilty and to establish that Defendant knew the boxes in her apartment were fruits of the health care fraud conspiracy, the jury would have had to believe "inference piled upon inference." Based on the evidence described above, the Court finds that there was sufficient

---

[1] In reality, the medications had been seized by DEA agents utilizing a delayed-noticed search warrant.

3

evidence from which the jury could have reasonably inferred Defendant's knowledge of the conspiracy, and of her deliberate participation in the conspiracy.

Next, Defendant argues that the government mischaracterized the conversation described above between Patel and Acharya discussing the stolen medication and that this fatally influenced the jury. Defendant argues that the government referred to Acharya's statement as "you cannot report this to the police," when in fact she said "legally you cannot do anything since there was medicine in it."

However, the government's actual statement at trial was the following (without objection at the time from Defendant):

> We have Komal Acharya who in the theft of the boxes from her apartment -- rather, of the type she was storing in the apartment, but the theft of the boxes from Chirag Soni's apartment, said, well, you know, legally you cannot do anything because there's medicine in there. That's her claim to fame, because she absolutely understood why he could not go to the police with a $500,000 theft.

Thus, contrary to Defendant's argument, the government did not mischaracterize Defendant's actual statement, but rather accurately repeated her statement and then argued that the jury could infer from her statement that Defendant "understood why [Defendant Patel] could not go to the police . . . ." Defendant further fails to note that this issue was, in fact, raised by Defendant at trial, and that Defendant spent ample time during her closing reminding the jury of the exact language of the call. The Court thus finds that the government's closing statement did not prevent the jury from drawing reasonable inferences from the evidence.

Defendant next points out that Chetan Gujarathi, a co-conspirator who pled guilty, testified at trial that Defendant Acharya had no knowledge about the conspiracy and did not know that the boxes contained billed-but-not-dispensed medications. The jury was free to believe or disbelieve

4

this portion of Gujarathi's testimony, and the Court will not judge the credibility of a witness or disturb the verdict based on the jury's permissible weighing of the evidence.

Finally, Defendant argues that there are several other interpretations that the jury could have arrived at regarding the recorded calls. For instance, Defendant argues that the jury *could* have inferred that, if she was indeed aware that the medications in her apartment were the fruit of an illegal conspiracy, why, after hearing about the robbery, Defendant Acharya did not insist that Defendant Patel remove the medications from her apartment. Defendant also argues that her failure to ask Defendant Patel why he wanted her to lie to the hospital about her address was due to her drugged state and should not have been interpreted by the jury as due to her knowledge of the conspiracy.

While Defendant puts forth persuasive reasons why the jury could have reached a different verdict, the Court nevertheless finds that a rational trier of fact could infer from the two recorded statements, as well as the unusual practice of storing medications in a private home, that Acharya was aware that the medication that was stored in her home was the fruit of an illegal scheme.

**Other Evidence**

The government also presented other evidence that helped to establish Acharya's motive for participating in the conspiracy. For example, the government argued at trial that Patel regularly paid Acharya varying amounts, through deposit in her bank account, for her assistance in the health care fraud conspiracy. The government introduced recorded conversations between Defendants Acharya and Patel from which the jury could infer that Acharya had knowledge of the overarching health care fraud conspiracy - for instance, jokes that established that Acharya understood the role of a "marketer" in soliciting persons to receive billed-but-not-dispensed medications in the conspiracy.

Defendant responds that the above calls referred to actual professional marketing rather than the services of the "marketers" described at length during the trial as being commonly employed in the conspiracy. Defendant also argues, as she did at trial, that the regular payments from Patel to her were loans, and notes that the government provided no witnesses who stated that the payments were actually payments for her help in the conspiracy and not loans.

Again, Defendant sets forth persuasive reasons why the jury could have disregarded the government's evidence and reached a different verdict. Nevertheless, the Court finds that other evidence offered by the government provides sufficient grounds from which the jury could have inferred general knowledge regarding the conspiracy by Acharya, as well as motive to participate in the conspiracy. This evidence therefore provided additional grounds for the jury's guilty verdict.

## Rational Objectivity of Jury

Defendant also briefly argues, without citation to caselaw, that the Court's denial of Defendant Acharya's motion for severance prior to trial in some manner "inhibited" the jury from "rational objectivity." The jurors were given the following instruction prior to deliberation:

> And in our system of justice, guilt or innocence is personal and individual. It is your duty to separately consider the evidence against each Defendant on each charge, and to return a separate verdict for each one of them. For each one, you must decide whether the Government has presented proof beyond a reasonable doubt that a particular Defendant is guilty of a particular charge. Your decision on any one Defendant or charge, whether it is guilty or not guilty, should not influence your decision on any of the other Defendants or charges.

As the Court noted when it originally denied Defendant Acharya's Motion for Severance, the jury instruction above, as well as the presumption that co-conspirators are to be tried together, was sufficient to preserve Defendant Acharya's right to a fair trial.

**Conclusion**

For the reasons stated above, **IT IS ORDERED** that Defendant's Renewed Motion for Judgment of Acquittal [572] is **DENIED**.

**SO ORDERED**.

                                              s/Arthur J. Tarnow
                                              ARTHUR J. TARNOW
                                              SENIOR U.S. DISTRICT JUDGE

Dated: October 15, 2012